**UNIQUE CONCEPTS, INC., and Floyd M. Baslow, Plaintiffs–Appellants,**

v.

**Kevin BROWN d/b/a Creative Walls, Templar and Schram, and World Plastics Extruders, Inc., Defendants–Appellees.**

No. 90–1378.

United States Court of Appeals, Federal Circuit.

July 19, 1991.

Maurice B. Stiefel and Stephen P. Gilbert, Bryan, Cave, McPheeters and McRoberts, New York City, for plaintiffs-appellants.

William J. Thomashower, Kaplan, Thomashower & Landau, New York City, argued for defendants-appellees.

Before RICH, MAYER and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Unique Concepts, Inc. and Floyd M. Baslow (collectively "Unique") appeal from the May 4, 1990, final judgment of the United States District Court for the Southern District of New York, holding that certain products produced by defendants Kevin Brown (d/b/a Creative Walls, Templar and Schram) and World Plastics Extruders, Inc. (collectively "Brown") do not infringe Unique's patent. *Unique Concepts, Inc. v. Brown*, 735 F.Supp. 145, —— USPQ2d —— (S.D.N.Y.1990). We affirm.

## BACKGROUND

### A. *The Patent in Suit*

Unique is the exclusive licensee under U.S. Patent 4,108,260 ('260 patent), entitled "Fabric Wall Coverings," issued April 19, 1977, and owned by Floyd M. Baslow. Contrary to its title, the patent is not directed to wall coverings themselves, but to an "assembly of border pieces" used to attach a fabric wall covering to a wall. The assembly is made up of a number of "right angle corner border pieces" and "linear border pieces" which are arranged so as to form a frame around the area of a wall to be covered.

Below is Fig. 2 from the '260 patent, showing an exploded view of the assembly of border pieces forming the framework.

The '260 patent issued from application Serial No. 680,703, filed April 27, 1976 (Baslow application), which as originally filed contained 14 claims. Claim 1, the only independent claim, recited an assembly comprising "linear border pieces and right angle corner border pieces," each of the border pieces having a raised face, a storage channel, and a keyway. The original claims of the Baslow application were rejected by the Patent and Trademark Office (PTO) as being unpatentable in view of various references. The Examiner found that the references "show frames including corners in arrangements similar to that of applicant...."

In response, the applicant amended his claims and argued against the references, stating that "[t]he main advantage of the present invention is that it greatly simplifies the mounting of a fabric covering...."

Thus an amateur can practice the present invention...."

The next item in the file history is a notice of allowability together with an examiner's amendment cancelling claims 1–3 and 5–14, and amending claim 4 to depend from claim 15. Application claims 15–17 and 4 issued as claims 1–4 of the '260 patent, respectively. Claim 1, the sole independent claim, reads:

1. An assembly of border pieces for creating a framework attachable to a wall or other flat surface for mounting a fabric sheet which is cut to dimensions at least sufficient to cover the surface, *said assembly comprising linear border pieces and right angle corner border pieces* which are arranged in end-to-end relation to define a framework that follows the perimeter of the area to be covered, *each piece* including a raised

face, a storage channel running adjacent the outer edge of the piece and having a narrow inlet communicating with said face, the portion of the selvage of said sheet which includes fabric material in excess of that necessary to cover said surface being stuffed in said storage channel so that the exposed selvage of the sheet lies against said face to present a smooth appearance which extends to said inlet and is directly adjacent said perimeter, said linear pieces being formed of an integral one piece plastic material of sufficient elasticity to permit dilation of said inlet whereby said inlet may be temporarily expanded to admit said excess material and then contracted to retain said excess material in said storage channel.

(Emphasis added).

### B. *The Proceedings in the District Court*

Unique brought the present suit in 1986, alleging that certain products made by Brown infringed claims 1–3 of the '260 patent, as well as another patent owned by Floyd Baslow. Brown denied infringement and filed counterclaims based on breach of contract, unfair competition, and antitrust.

After some initial maneuvering, the parties entered into an extensive "Stipulation and Order," which substantially narrowed the issues for trial. Pursuant to the stipulation, the sole issue which remained was whether two of Brown's products (the "regular flat track with heel" and the "cove track") infringed claims 1–3 of the '260 patent. Validity was not at issue; the stipulation prevented a claim interpretation which would render the claims invalid.

Brown maintained that its accused products do not infringe for two reasons. First, the accused products do not have corner pieces which were *preformed* at a right angle, but instead employ two linear pieces which are each mitered, *i.e.*, cut at a 45 degree angle, and then placed together to form a right angle. Second, the accused products do not employ a keyway. While recognizing that the language of the claims does not expressly recite a keyway, Brown

urged that its omission from the claims was an error by the PTO, and that such a limitation must be read into the claims; otherwise, it was urged, the claims would be invalid in view of the prior art, primarily U.S. Patent 3,657,850 (the Billerant patent). Brown reasoned that since the stipulation prevented a claim interpretation which would render the claims invalid, the keyway must be read in to "save" the claims.

A trial was held, at which each party, by agreement, presented as its only witness a patent expert. After hearing the testimony, the judge entered judgment for Brown, finding that (1) the keyway feature was inadvertently omitted from claim 1 by the examiner and must be read into the claim to avoid anticipation by Billerant, and (2) the mitered linear pieces used by Brown do not meet the claim language "right angle corner border pieces," either literally or under the doctrine of equivalents. Unique appealed.

## DISCUSSION

The '260 patent claims a framework for mounting a fabric sheet "comprising linear border pieces and right angle corner border pieces." The district court found the patent not infringed because, *inter alia*, the language "right angle corner pieces" is limited to preformed corner pieces, whereas the mitered linear pieces used by Brown do not meet this limitation either literally or under the doctrine of equivalents.

■ Unique argues that the district court erred in finding that the claims do not literally cover assemblies having mitered corners. Claim construction is an issue of law, which we review *de novo*. *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1578, 6 USPQ2d 1557, 1559 (Fed.Cir.1988). To ascertain the meaning of claims, we consider three sources: the claims, the specification, and the prosecution history. *Loctite Corp. v. Ultraseal, Ltd.*, 781 F.2d 861, 867, 228 USPQ 90, 93 (Fed.Cir.1985).

■ The language of claim 1 makes unambiguous reference to two distinct ele-

ments of the claimed structure: linear border pieces and right angle corner pieces. If, as Unique argues, linear border pieces of framing material, whose ends are mitered, are the same as linear border pieces *and* a right angle corner piece, the recitation of both types of pieces is redundant. Unique's argument for merging the two types of claim elements into one also violates the oft-quoted "all elements rule," the essence of which is that to prove infringement, every element in the claim must be found in the accused device either literally or equivalently. *See SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.,* 859 F.2d 878, 889, 8 USPQ2d 1468, 1477 (Fed.Cir.1988). The district court thus correctly held that the plain language of the claim includes two distinct types of elements, including right angle corner border pieces, thereby precluding literal infringement.

The specification also shows that the claim language "right angle corner border piece" means a single preformed piece. The specification repeatedly refers to the preformed pieces 15 and 16, using only the words "right angle" border pieces or "corner pieces." In addition, the drawings show only preformed corner pieces and no mitered pieces.

The specification does refer once to "improvise[d] corner pieces" as an alternative to the preformed pieces:

Instead of using preformed right-angle corner pieces of the type previously disclosed, one may improvise corner pieces by miter-cutting the ends of a pair of short linear border pieces at right angles to each other and providing a space between the cut ends to define the necessary storage slot. For this purpose, a temporary spacer may be used to provide exactly the right amount of storage space. The advantage of such corner pieces resides in the fact that linear pieces may be mass-produced at low cost by continuous extrusion, whereas preformed corner pieces must be molded or otherwise fabricated by more expensive techniques. On the other hand, *a preformed corner piece is somewhat easier for a do-it-yourselfer to work with.*

Col. 8, lines 28–41 (emphasis added). However, this reference does not negate the claim language clearly reciting right angle corner pieces. This paragraph, rather than providing an illustration of a right angle corner border piece, as the dissent indicates, provides an alternative to it. The language right angle corner border piece is too clear to encompass linear pieces that are not right angle corner pieces. The fact that mitered linear border pieces meet to form a right angle corner does not make them right angle corner pieces, when the claim separately recites both linear border pieces and right angle corner border pieces. Such an interpretation would run counter to the clear meaning of the language. Linear border pieces are not right angle corner border pieces. Both types of pieces are required by the claim.

The statute requires that an inventor particularly point out and distinctly claim the subject matter of his invention. 35 U.S.C. § 112 (1988). It would run counter to this statutory provision for an applicant for patent to expressly state throughout his specification and in his claims that his invention includes right angle corner border pieces and then be allowed to avoid that claim limitation in a later infringement suit by pointing to one paragraph in his specification stating an alternative that lacks that limitation, and thus interpret the claim contrary to its plain meaning. Such a result would encourage an applicant to escape examination of a more broadly-claimed invention by filing narrow claims and then, after grant, asserting a broader scope of the claims based on a statement in the specification of an alternative never presented in the claims for examination.

The claims as granted contain the right angle corner border piece limitation. All the limitations of a claim must be considered meaningful, *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.,* 822 F.2d 1528, 1532–33, 3 USPQ2d 1321, 1324–25 (Fed.Cir.1987), and Brown's avoidance of that limitation avoids literal infringement.

It is also well-established that subject matter disclosed but not claimed in a

patent application is dedicated to the public. *Edward Miller & Co. v. Bridgeport Brass Co.*, 104 U.S. 350, 352, 26 L.Ed. 783 (1881). That is what occurred here. If Unique intended to claim mitered linear border pieces as an alternative to its right angle corner border pieces, it had to persuade the examiner to issue such a claim. As will be shown below, Unique failed to do so.

The prosecution history also supports the district court's decision. During the prosecution of the '260 patent, the examiner understood the right angle corner pieces of Claim 1 to be distinct from mitered linear pieces, because he initially rejected the claims, citing and referring to other references as showing preformed, right angle corner pieces or braces. The applicant overcame the rejection by arguing the advantage of simplification for the do-it-yourselfer. As noted in the specification, a preformed corner piece is one of the advantages of the invention making it attractive to the do-it-yourselfer.

There then occurred a telephone interview between the attorney and the examiner, following which the Examiner cancelled certain claims. Among the cancelled claims was original Claim 9, which depended from original Claim 1 (also cancelled) and recited short linear mitered pieces as forming a right angle corner piece.

The dissent relies upon Claim 9 to construe what is now Claim 1 as including linear pieces which are mitered to form a corner piece. It interprets "linear pieces whose ends are mitered" to be a species of generic Claim 1's "right angle corner border pieces," and therefore within its scope. Such a construction is unjustified because the language of Claim 1 is clear and is inconsistent with Claim 9 being dependent thereon.

The record contains no indication of what transpired in the interview and why Claim 9 was cancelled. A plausible reason is that Claim 9 was cancelled because it was not properly dependent upon original Claim 1. The court referred to Brown's expert, who stated that the claim was cancelled because it did not encompass an invention suitable for a do-it-yourselfer. The dissent finds

this expert testimony to be "wholly incredible." We do not know why Claim 9 was cancelled and cannot speculate on the reasons for the cancellation; we can only interpret the clear language of the claims as granted.

When the language of a claim is clear, as here, and a different interpretation would render meaningless express claim limitations, we do not resort to speculative interpretation based on claims not granted. *See White v. Dunbar*, 119 U.S. 47, 52, 7 S.Ct. 72, 75, 30 L.Ed. 303 (1886) ("The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms."). Our interpretation gives full effect to the recitation of two distinct elements in the claimed structure: linear border pieces and right angle corner border pieces. It also gives full effect to the specification and the expert testimony, and a reasonable interpretation of the prosecution history. *See Perini America, Inc. v. Paper Converting Mach. Co.*, 832 F.2d 581, 584, 4 USPQ2d 1621, 1624 (Fed.Cir. 1987).

With respect to infringement by equivalents, since Brown conceded that the "result" of the right angle corner piece of the accused device is substantially the same as that of Claims 1, 2, and 3, the district court held that "the result is substantially the same; however, the means and function of the patented and accused devices are not the same, negating a finding of equivalents." 735 F.Supp. at 147. Unique argues that the district court erred as a matter of law by omitting the word "substantial" in its conclusory statement regarding infringement by the doctrine of equivalents. We disagree.

The issue of law on this point is whether the trial court understood and properly applied the requisite elements for finding infringement by equivalence, *i.e.*, determining whether the '260 patent and Brown's structure are substantially the same in function, way and result. *See Pennwalt*

*Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir. 1987) (en banc), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988). On review of the record, we conclude that the court understood and correctly applied the appropriate test. The court-appointed expert told the judge that a finding of infringement by equivalents requires a determination whether the accused devices achieve *substantially the same* result and *substantially the same* function of the claimed invention, in *substantially the same* way. At trial, Unique's expert similarly testified. Brown's expert repeated the test, with short-hand reference to *"the same"* instead of *substantially the same.* However, there is no indication that the judge (or either party) misunderstood this short-hand reference and eliminated the word "substantially" from his analysis. Brown's counsel recounted the *substantially the same* test while examining its witness. Unique's counsel did not cross-examine Brown's expert on this point. In the opinion itself, the judge's use of "substantially," taken in context, refers to all of the factors in a doctrine of equivalents analysis.

The determination whether an accused device infringes the claims of a patent is one of fact, reviewed under the clearly erroneous standard. *Lemelson v. United States,* 752 F.2d 1538, 1547, 224 USPQ 526, 530 (Fed.Cir.1985). Therefore, we may reverse the district court's finding of no infringement only if we are left with a "definite and firm conviction that a mistake has been committed" by the trial court. *U.S. v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). The court explained that because Brown's device performs the function and achieves the result in a substantially different way, there was no infringement by Brown's frame of the '260 patent:

One of the main objects of the invention was stated to be to make something useful for a do-it-yourselfer. In fact, claim 9, as originally presented, expressly called for mitered pieces and was cancelled because it was not something that a do-it-yourselfer could do, according to

[Brown's] expert witness. The accused device has a *different and complicated way* of doing what the right-angle piece does in the patented device. It is a lot simpler for the do-it-yourselfer to use the preformed right-angle pieces of the patented device and far more difficult to create corners by the mitered means used and the function of the accused device.

735 F.Supp. at 147 (emphasis added). This finding is supported by the testimony of Brown's expert as to the difference between mitered corners and preformed corners:

In this particular case it is more than simply cutting two pieces because you have to cut four pieces to make two mates. You have the channel and the inlet that has to be made also.

Additionally, you have to have a spacer and make the proper space so you can shove the little piece of selvage that's left over at the end and make a nice fine product.

Additionally, you have to put that corner piece up in the right place in the right section. It is simply *quite a different procedure* to do all of this and to end up with the same result as a right-angle corner piece. I think you are doing something in a *completely different way.*

(Emphasis added). On review of the record, we see no clear error in the district court's findings.

## CONCLUSION

The district court was correct in concluding that the claim language "right angle corner border pieces," properly construed with reference to the specification and prosecution history, requires a preformed corner piece. The district court did not clearly err in finding that the '260 patent does not literally cover Brown's corners formed by aligning two mitered straight pieces. Moreover, the district court did not clearly err in finding that Brown's accused frame does not infringe under the doctrine of equivalents because it does not perform

in the same way. In view of this result, we do not review the district court's holding with respect to the keyway issue. For the foregoing reasons, the decision of the district court is

AFFIRMED.

RICH, Circuit Judge, dissenting.

As the majority opinion states, this appeal comes to us with two issues, both relating to infringement of the claims in suit, claims 1–3, plus a stipulation which inhibited the trial court from considering validity or so construing the claims as to render them invalid for any reason. The issues, then, are (1) whether a "keyway" limitation must be read into the claims, which do not refer to a keyway, in order to save them from invalidity and (2) whether the claims in suit are not infringed because they must be construed as limited to *preformed one-piece* corner border pieces which defendants do not use.

The majority rests its decision on issue (2) and therefore does not reach issue (1), agreeing with defendants' contentions and the district court. On this issue of claim construction, I am constrained to disagree with both the district court and the majority for the following reasons. I do agree that the majority, having reached its decision on issue (2), albeit incorrectly as a matter of claim construction, was justified in not reaching issue (1). Since I would hold to the contrary on issue (2), I would feel obliged to pass on issue (1) and would hold that under long-established precedent too well settled to require citation it is not permissible to read limitations into claims which they clearly do not contain. In sum, I would hold claim 1 infringed, as did the court-appointed expert or "master," though I would hold it *literally* infringed. (This assumes that defendants' assemblies have *both corner* border pieces (as distinct from "linear" border pieces) and *linear* border pieces, which I do not know to be the fact.)

Parties cannot, by stipulation, make invalid claims valid nor can they require this or any other court to violate established principles of claim construction. Validity and infringement are unrelated questions.

Invalid claims can perfectly well be infringed, which is simply a matter of construing the words of the claim and then determining whether they can be read on the accused structure. Courts constantly hold claims infringed but invalid. Validity vel non should have no effect on how the infringement issue is decided. The district judge did not seem to understand that. The stipulation that the claims *must* be so construed for infringement purposes as to assure their actual validity is *not binding on courts*. Parties cannot require courts to decide *legal* questions, which are reviewable *de novo*, a certain way. If they wish to settle their cases, they should do just that.

In the present posture of this appeal, the sole question is whether the majority has correctly construed the meaning of a single limitation in claim 1, which claim is set forth in full in its opinion. That limitation is: "right-angle corner border pieces." I simply disagree with the majority's conclusions and with its attempted supporting reasoning. We arrive at different "plain meanings."

I fully agree with the majority's statement of the law respecting claim construction, a question of law we review *de novo*. We construe claims in the light of the *language of the claim* itself, the *specification* on which it is based, and the whole *prosecution history*. The majority has not properly done this and, in my judgment, has demonstrably come to a wrong conclusion. Significant statements in the specification and prosecution history are misapplied. I shall begin with the specification.

As the majority states, the specification first describes and illustrates the *one-piece* corner pieces 15 and 16, outside and inside corners respectively. True, these are the only corner pieces shown in drawings. Then the specification contains the significant statement quoted in the majority opinion from the patent at col. 8, lines 28–41. (*My* emphasis):

> Instead of using *preformed* right-angle corner pieces of the type previously disclosed, one may improvise *corner pieces* by miter-cutting the ends of a pair

of *short* linear border pieces placed *at right angles* to each other and providing a space between the cut ends to define the necessary storage slot. For this purpose, a temporary spacer may be used to provide exactly the right amount of storage space. The *advantage* of *such corner pieces* resides in the fact that linear pieces may be mass-produced at low cost by continuous extrusion, whereas *preformed* corner pieces must be molded or otherwise fabricated by more expensive techniques. On the other hand, a preformed corner piece is *somewhat* easier for a do-it-yourselfer to work with.

Perhaps this is a matter, on both sides, of seeing what you choose to see. Beyond question, however, the specification discloses *two species* of right-angle corner border pieces: (1) preformed one-piece and (2) mitered, *short,* linear pieces, arranged at right angles and properly spaced at their junction. The latter are to be joined to longer linear pieces. No drawing is needed to make (2) clear. In any case, there are always, in a single assembly, both *corner* pieces and *linear* pieces, even when the second species of corner is used.

Now I turn to the contents of the file-wrapper. From day one when the application was filed these two kinds of corners were not only described but claimed and we look to this, equally with the specification, to determine the correct construction of the claim 1 language. Original claim 1, as filed, used exactly the same terminology as patent claim 1, "right-angle corner border pieces." There were 14 original claims on day one. Among them was claim 9, depending from claim 1, reading:

> 9. An assembly as set forth in claim 1, wherein *said right-angle corner pieces are formed by a pair of short linear pieces whose ends are mitered and spaced from each other to define a slot therebetween* to receive the pucker of the selvage when the selvage is locked into the keyway. [My emphasis.]

Note that claim 9 is referring back to "right angle" corners *as described in claim 1* and is thus defining a species of that genus. Now, what does that tell one skilled in the art about the meaning of "right-angle corner border pieces"? It tells one that the claim 1 phrase is, and was clearly intended by the applicant to be, broad enough to cover the species recited in claim 9, which the majority says it does not cover. There is a genus-species relationship between the phrase in claim 1, which never changed throughout the prosecution, and the particular form of corner piece recited in claim 9.

I have to disagree with the majority's criticism or downplaying of my use of claim 9 as a construction aid in several particulars. The majority seems to start with an *a priori* assumption of what the "clear" language of claim 1 means. On the other hand, I am looking at the genealogical record of that claim to *find out* what it means.

The majority says, "we ... cannot speculate on the reasons for the cancellation" of claim 9 because we have no idea of the content of the 'phone conversation between the examiner and the attorney which led to cancellation, along with many other claims. I agree. The majority then *speculates* that it may have been an improper dependent claim, though it is not apparent why and the majority gives no reason. I don't care why (or whether) claim 9 was cancelled—it was simply part of the original application and sheds a bright *light* on what claim 1 was intended to mean.

I see no significance to the fact that claim 9 was cancelled because it *is* part of the prosecution history, *all* of which is clearly before us. The majority correctly states that we must consider the prosecution history, of which claim 9 is a significant part.

The majority opines that the alternative corner piece described in claim 9 *has not been claimed* and is therefore dedicated to the public. This strange position begs the question. Of course it has not been claimed *specifically.* The question, however, is whether it is covered by or included in claim 1, which I say it is. Therefore, its subject matter is not "dedicated to the public."

35 U.S.C. § 112, which requires claims, is irrelevant to a consideration of what claims mean. Since Brown's so-called "expert"—expert only in the sense he was a patent lawyer—knew no more than the members of this panel, his speculations are of no value to us. The citation of cases is also of no help in finding out what claims mean.

To me, claim 9 is the only evidence of record, except for the specification itself, which is of any value in construing claim 1, and I think it is of great value.

The majority seems to say that my construction of claim 1 "would render meaningless express claim limitation." I await enlightenment on what those "express limitations" are. I have already said that I read both *corner* pieces and *linear* pieces in claim 1. The debate here is over the *kinds* of corner pieces claim 1 covers. It is clear that it is not limited to unitary or preformed or one-piece corner pieces as shown in the drawings at 15 and 16. That much is truly "clear."

Much has been made of the contention that using short mitered corner pieces is something that a "do-it-yourselfer"—an "amateur"—is unable to do. Defendants' expert speculated, with no support whatsoever, that, in his opinion, the examiner required claim 9 to be cancelled because "it was simply not something that a do-it-yourselfer could do." Both defendants and the district court relied heavily on this testimony. I find this opinion testimony to be wholly incredible. The sole basis given by the expert for his opinion was the fact that claim 9 was cancelled while claim 4 was not. However, there is absolutely nothing in the record showing *why* the examiner allowed certain claims and cancelled certain other claims.

The fact is that this whole "do-it-yourselfer" argument has been blown way out of proportion. The specification does not state that do-it-yourselfers are *incapable* of using mitered corner pieces; it merely states, as quoted above, that preformed corner pieces are "somewhat easier for a do-it-yourselfer to work with." Furthermore, the *only reference* to do-it-yourselfers during prosecution is a statement that certain known *prior art* arrangements are difficult for a do-it-yourselfer to use because the *fabric must be cut precisely to size* whereas according to the invention of the '260 patent, the fabric need merely be cut *roughly* to size, with the excess fabric being stuffed in the storage channel. This is equally true as to either kind of corner. To infer from this one statement that the claims must be limited to features not recited in the claims (i.e., *"preformed"* corner pieces) is contrary to established patent law practice.

Let us consider next another lesson about meaning to be learned from the specification. In the quotation above from column 8, in the opening sentence the drafter of the specification exhibits a clear consciousness of the distinction between "preformed right-angle corner pieces" and those made by mitering and placing at right angles two short pieces of linear border pieces. Claim 1 does not contain the limiting word "preformed" yet the majority, without justification, is reading it into the claim in holding that the claim does not cover corner pieces which are made up as clearly described in the specification.

I also point out that the term "right-angle" is not a limitation to *preformed* unitary pieces since the specification makes clear that the made-up variety of corners are also right-angle corner pieces when assembled.

The majority's argument based on alleged violation of the "all elements" rule is untenable. It overlooks the fact that the teaching in the specification is clear about making "corner pieces" by using two *"short* linear border pieces" (my emphasis) and then using such "improvised" *corner pieces in conjunction with linear pieces* to make the complete wall frame. Of course, it is the all-elements rule on which the defendants rely for non-infringement, arguing that they have no "corner pieces" when in fact they have a type of corner piece which is disclosed and claimed as an element of the combination of claim 1. I am not "merging the two types of claim elements into one"—whatever that may mean. I am simply saying that the ele-

ment defined in claim 1 as "right-angle corner border pieces" is, as clearly shown by the patent and its prosecution history, a limitation generic to two types of corner pieces disclosed in the patent which is broad enough to read on defendants' structure because it is clearly *not* limited to "preformed" or "unitary" corner pieces, as held below and by the majority. That is the sum and substance of my position and it calls for reversal.

The prosecution history contains nothing contradictory to my position and much to support it, as shown above. I have not found any evidence to contradict it or to support the district court opinion which demonstrates a dismal failure to comprehend many patent law fundamentals and accepts, as established fact, opinion statements of defendants' expert witness unsupported by the record. The reader should also be aware that the district judge made no separate "findings of fact." He wrote a short, confused opinion which he concluded with the escape clause saying "The foregoing shall constitute the Findings of Fact and Conclusions of Law in accordance with Rule 54(b) [sic] of the Fed.R.Civ.P."