29 F.3d 644
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
CABLESTRAND CORPORATION, Plaintiff-Appellee,
v.
Melvin WALLSHEIN, Defendant-Appellant,
Melvin WALLSHEIN, Plaintiff-Appellant,
v.
Allan B. WEISS, Defendant-Appellee.
 No. 93-1490.
 United States Court of Appeals, Federal Circuit.
 May 24, 1994.
Rehearing Denied; Suggestion for Rehearing In Banc
Declined July 5, 1994.
 
 Before NEWMAN, PLAGER, and SCHALL, Circuit Judges.
 SCHALL, Circuit Judge.
 
 
 1
 Melvin Wallshein, the named inventor of U.S. Reissue Patent Nos. 30,332 (the '332 patent) and 30,593 (the '593 patent), appeals from the May 28, 1994 judgment of the United States District Court for the Central District of California, case no. CV 89-4329. In the opinion accompanying the judgment, the district court concluded that (i) the accused "Six Strand Wire" sold by Cablestrand Corporation (Cablestrand) did not infringe the '332 patent or the '593 patent, either literally or equivalently; (ii) Allan B. Weiss, president of Cablestrand, could not be held personally liable for the debts of Cablestrand; and (iii) any rights Wallshein may have had against Cablestrand and/or Weiss prior to bringing the present infringement claims were barred by laches. We affirm on the ground of no literal infringement[1] and therefore do not reach the other issues decided by the district court.[2]
 
 DISCUSSION
 
 2
 * Determining whether a patent is infringed involves a two-step inquiry: (1) interpreting the claims; and (2) comparing the properly interpreted claims to the accused device. Read Corp. v. Portec, Inc., 970 F.2d 816, 821, 23 USPQ2d 1426, 1431 (Fed.Cir.1992). Claims are construed as a matter of law by the district court, and the construction given the claims is reviewed de novo by this court on appeal. 970 F.2d at 822, 23 USPQ2d at 1432. The comparison of the properly construed claims to the alleged infringing structure, the ultimate question of infringement, is a matter of fact, reviewed for clear error by this court in the case of a bench trial. SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1125, 227 USPQ 577, 589 (Fed.Cir.1985) (in banc ). Wallshein, as owner of the '332 and '593 patents, bears the burden of proving infringement by a preponderance of the evidence. Mannesmann DeMag Corp. v. Engineered Metal Prods., Co., 793 F.2d 1279, 1282, 230 USPQ 45, 46 (Fed.Cir.1986).
 
 II
 
 3
 Each of the independent claims in dispute (claim 1 in the '332 patent and claim 52 in the '593 patent) is directed to an "arch wire" used in orthodontic applications--for example, to secure braces on a patient's teeth in a predetermined positional relationship. Because the two independent claims are very similar (claim 1 relates to an orthodontic arch wire, whereas claim 52 relates to the same wire in combination with an orthodontic bracket), claim 1 of the '332 patent may be viewed as representative of the invention in the appeal. In relevant part, claim 1 recites that the arch wire comprises a plurality of "strands coiled in the form of a tightly wound elongated coiled wire having an array of interleaved turns ... and having a lumen extending therethrough." Much of the litigation in the district court focused on the definition of the term "lumen" and whether the accused Six Strand Wire had one. However, based on our conclusion below that the Six Strand Wire did not possess another limitation recited in the asserted claims, we need not review either the district court's interpretation of the term "lumen" or its ultimate finding that one was lacking in the accused wire.
 
 
 4
 Claim 1 further recites that the strands making up the arch wire are "made from a material sufficiently elastic to at least permit bending of the arch wire over a short length thereof by selectively and at least partially separating adjacent turns." The district court interpreted this language as requiring that adjacent turns of the arch wire, upon being bent, must separate by a certain minimum amount. Although it did not specify the precise minimum separation amount, the district court concluded that this limitation was not met by the accused wire because "[t]here is no separation between adjacent turns in the bent Cablestrand Six Strand wire which would allow food particles to become lodged between the adjacent turns."
 
 
 5
 Wallshein argues that the district court committed reversible error in its interpretation of the "at least partially separating adjacent turns" limitation. In support of his view, Wallshein essentially contends that the phrase "at least partially separating" includes any degree of separation, no matter how small or microscopic, which, as a consequence of physical principles, inherently must be present in all bent, flexible wires. We disagree and hold that, as a matter of law, the district court correctly construed claim 1 as requiring a certain minimum amount of separation between adjacent turns upon bending the arch wire. This interpretation of the claims necessarily follows from application of the rule that "[a]ll the limitations of a claim must be considered meaningful." Unique Concepts, Inc. v. Brown, 939 F.2d 1558, 1562, 19 USPQ2d 1500, 1504 (Fed.Cir.1991) (citing Perkin-Elmer Corp. v. Westinghouse Elec. Corp., 822 F.2d 1528, 1532-33, 3 USPQ2d 1321, 1324-25 (Fed.Cir.1987)). Wallshein states that separations of at least microscopic proportions are "absolutely dictated by the geometries and properties of the materials and [occur] whenever there is bending of a wire of the type under discussion...." In other words, under Wallshein's interpretation, the phrase "at least partially separating adjacent turns" is merely a truism describing a phenomenon dictated by the laws of physics, and which occurs in every wire of this type including those in the prior art. Apparently, Wallshein would have us hold that the disputed phrase is mere surplusage. Construing the claim language at issue as a statement of truism must be rejected, however, for it "would render meaningless [an] express claim limitation[ ]." Unique Concepts, 939 F.2d at 1563, 19 USPQ2d at 1504. See also Texas Instruments Inc. v. United States Int'l Trade Comm'n, 988 F.2d 1165, 1171, 26 USPQ2d 1018, 1023 (Fed.Cir.1993) (rejecting a patentee's proffered claim construction because it "would render the disputed claim language mere surplusage."). Therefore, in order to give effect to the disputed language, we conclude that the separations between adjacent turns must be of a magnitude somewhat greater than microscopic.
 
 
 6
 Keeping the above claim interpretation in mind, we observe that the only evidence proffered by Wallshein that separations are present in the accused wire consists of photomicrographs allegedly showing microscopic separations in a bent Six Strand Wire. Consequently, because we have concluded that a proper interpretation of the claims in suit requires that the separations be of some magnitude greater than microscopic, Wallshein's claim of literal infringement was defeated by a failure of proof.
 
 COSTS
 
 7
 Each party shall bear its own costs.
 
 
 8
 NEWMAN, Circuit Judge, concurs in the result.
 
 
 
 [1]
 On appeal, Wallshein does not challenge the district court's finding of non-infringement under the doctrine of equivalents
 
 
 [2]
 Wallshein's counsel agreed during oral argument that an affirmance on the issue of non-infringement would render moot the issues of laches and Weiss' personal liability