**Paul J. ROBERG, Plaintiff,**

v.

**20th CENTURY PLASTICS, INC., Defendant.**

**No. Civ.A. 97–4437(AJL).**

United States District Court, D. New Jersey.

Jan. 5, 1999.

William J. O'Shaughnessy, McCarter & English, Newark, NJ, James A. Oliff, Michael S. Culver, Caroline D. Dennison, Oliff & Berridge, Alexandria, VA, for plaintiff.

William L. Mentlik, Lerner, David, Littenberg, Krumholz & Mentlik, Westfield, NJ, Roderick G. Dorman, Mark C. Scarsi, Christie Parker & Hale, Pasadena, CA, for defendant.

## OPINION

LECHNER, District Judge.

This case concerns a dispute over a transparent, plastic protective holder for thin items.[1] Plaintiff, Paul J. Roberg ("Roberg"), brought suit against the defendant, 20th Century Plastics, Inc. ("20th Century") alleging patent infringement. *See* Complaint ¶ 1.

Currently pending are a motion for summary judgment filed by 20th Century (the "20th Century Motion for Summary

---

1. Thin items include: photographic slides, prints or negatives, baseball cards, stamps, business cards, etc.

Judgement") and a cross motion for summary judgement filed by Roberg (the "Roberg Motion for Summary Judgment").[2] 20th Century seeks summary judgment of non-infringement either literally or pursuant to the doctrine of equivalents. *See* 20th Century Motion for Summary Judgment. Roberg seeks summary judgment of literal infringement. *See* Roberg Motion for Summary Judgment. For the reasons set forth below, both the 20th Century Motion for Summary Judgment and the Roberg Motion for Summary Judgment are denied.

## FACTS

### A. Parties

Roberg resides in Tenafly, New Jersey and is the sole owner of United States Patent 4,958,450 (the "'450 Patent"). *See* Complaint ¶¶ 2, 4. The '450 Patent was issued on 25 September 1990 and was entitled *Protective Holder for Holding Thin or Substantially Thin Items.* *See id.* ¶ 4.

20th Century is incorporated in California with its principal place of business in Brea, California. *See* Complaint ¶ 3. 20th Century produces and sells photo storage pages (the "Photo I.D. Pages") that are alleged to infringe the '450 Patent. *See id.* ¶ 5; Anglo Declaration ¶ 2.

### B. Procedural History

Roberg commenced this action on 10 September 1997 by filing a complaint (the "Complaint") alleging patent infringement pursuant to 35 U.S.C. § 271. *See* Complaint ¶¶ 1, 5–6. The Complaint also seeks treble damages pursuant to 35 U.S.C. § 284, and an injunction barring 20th Century from infringing the '450 Patent. *See* Complaint pp. 2–3 ¶¶ A–G.

2. In support of the 20th Century Motion for Summary Judgment, 20th Century submitted:
 (1) Defendant/Counterclaimant's Memorandum in Support of Its Motion for Summary Judgment of Noninfringement (the "20th Century Moving Brief");
 (2) Statement of Material Facts;
 (3) Declaration of Thomas J. Anglo (the "Anglo Declaration") with attached exhibits; and
 (4) Certification of William L. Mentlik in Support of Defendant/Counterclaimant's Motion for Summary Judgment of Noninfringement (the "Mentlik Certif.") with attached exhibits.
 In opposition to the 20th Century Motion for Summary Judgment, Roberg Submitted:
 (1) Plaintiff Roberg's Opposition to Defendant's Motion for Summary Judgment of Non-infringement of U.S.Patent 4,958,450 (the "Roberg Opposition Brief") with attached exhibits; and
 (2) Plaintiff Roberg's Opposition to Defendant's Statement of Material Facts.
 In support of the Roberg Motion for Summary Judgment, Roberg submitted:
 (1) Memorandum in Support of Plaintiff Roberg's Motion for Summary Judgment of Literal Infringement (the "Roberg Moving Brief") with attached exhibits; and
 (2) Plaintiff Roberg's Statement of Material Facts in Support of Motion for Summary Judgment of Literal Infringement.
 In opposition to the Roberg Motion for Summary Judgment, 20th Century submitted:
 (1) Defendant/Counterclaimant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment of Literal Infringement (the "20th Century Opposition Brief"); and
 (2) Supplemental Certification of William L. Mentlik in Support of Defendant/Counterclaimaint's Motion for Summary Judgment of Noninfringement and in Opposition to Plaintiff's Motion for Summary Judgment of Literal Infringement (the "Supplemental Mentlik Certif.") with attached exhibits.
 Applicable to both the 20th Century Motion for Summary Judgment and the Roberg Motion for Summary Judgment, Roberg and 20th Century submitted: Stipulation on Consent to Defined Terms and Chronology for Purposes of Hearing on Summary Judgment Motions (the "Joint Stipulations").
 By letter, dated 30 November 1998 (the "30 November 1998 Letter"), Roberg and 20th Century were provided an opportunity to update their previous submissions. In response to the 30 November 1998 Letter, Roberg submitted Supplemental Brief in Support of Plaintiff Roberg's Motion for Summary Judgment of Literal Infringement (the "Roberg Supplemental Brief") and 20th Century submitted Defendant/Counterclaimant's Supplemental Memorandum in Support of Its Motion for Summary Judgment of Noninfringement, and in Opposition to Plaintiff's Motion for Summary Judgment of Literal Infringement (the "20th Century Supplemental Brief").

On 3 December 1997, 20th Century filed an answer to the Complaint (the "Answer") and asserted a counterclaim against Roberg requesting a declaratory judgement of non-infringement and seeking attorneys' fees under 35 U.S.C. § 285. *See* Answer p. 4 ¶¶ 7–9.

On 24 December 1997, Roberg filed an answer to the Counterclaim of 20th Century ("Answer to Counterclaim"). *See* Answer to Counterclaim. Roberg denied allegations 20th Century does not produce or sell a product that infringes the '450 Patent. *See id.*

The central issue of both the 20th Century Motion for Summary Judgment and the Roberg Motion for Summary Judgment is the construction of claims one and two of the '450 Patent ("Claim One" and "Claim Two") and the comparison of the properly construed claims to the items produced by 20th Century that are accused of infringing. On 5 January 1998, proceedings were conducted concerning the filing of the motions for summary judgment. During the proceedings, both parties agreed that a *Markman*[3] hearing was not necessary to resolve the issues and that the issues could be resolved on the briefs. *See* Transcript of 5 January 1998 Proceedings ("Tr. 5 Jan. '98 Proceedings") at p. 3, 1. 11 to p. 4, 1. 3. The parties further agreed the motions for summary judgment could be decided based solely upon the claims (the "Claims"), specification (the "Specification"), and file-wrapper history (the "Prosecution History"). *See id.* at p. 8, 11. 10–21.

Following completion of all briefing, a hearing was held on 21 December 1998 (the "21 December 1998 Hearing") concerning the 20th Century Motion for Summary Judgment and the Roberg Motion for Summary Judgment.

*C. Background*

The '450 Patent and the Photo I.D. Pages concern flexible holder sheets for holding thin items. *See* '450 Patent; Anglo Declaration ¶ 4 (describing construction of Photo I.D. Pages). Several flexible holder sheets are in the public use. *See* '450 Patent, "Background of Invention." Holder sheets, other than as contemplated by the '450 Patent, have several disadvantages—difficulty in loading items, entrance of dust or moisture into the holding pocket, and easy dislodgement of items. *See id.* The '450 Patent was designed to eliminate the disadvantages of the prior art. *See id.*

1. *The '450 Patent*

a. *The Patent*

The Patent Application was filed on 20 September 1988 and was issued as a patent on 25 September 1990. *See* '450 Patent. The '450 Patent contains two independent claims. *See id.*

Claim One provides as follows:

1. A *holder for thin items* comprising: a *backing sheet* having a length, and a width; a *plurality of strips* having a length, a width substantially equal to the width of said backing sheet, each of said strips having *an upper edge and a lower edge*, said strips being connected to said backing sheet along a *longitudinal connection line* running substantially parallel to each of said strip edges spaced from said lower edge a distance which is less than the distance said longitudinal connection line is spaced from said upper edge, and said strips each being connected to said backing sheet along a *plurality of transverse connection lines* running substantially transverse to said longitudinal connection line, each transverse connection line extending toward the upper edge of the corresponding strip from adjacent said longitudinal

**3.** *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

connection line of a corresponding strip and terminating at a location spaced from said upper edge of the corresponding strip, each of said *plurality of strips* being located along the length of said backing sheet, *such that strips positioned between upper and lower adjacent strips have upper and lower overlapping portions,* said upper overlapping portion being defined between the location of termination of said transverse connection lines and the upper edge of the corresponding strip, said lower overlapping portion being defined between the longitudinal connection of the corresponding strip and the lower edge of the corresponding strip, *said lower overlapping portion being positionable to overlap said upper overlapping portion of an adjacent strip and said lower overlapping portion being positionable to underlap said upper overlapping portion of the adjacent strip.*

Claim One (emphasis added).

Claim Two provides as follows:

2. A *holder for thin items* comprising: a *backing sheet* having a length, and a width; a *plurality of strips* having a length, a width substantially equal to the width of said backing sheet, each of said strips having *an upper edge and a lower edge,* said strips being connected to said backing sheet along a *longitudinal connection line* running substantially parallel to each of said strip edges spaced from said lower edge a distance which is less than the distance said longitudinal connection line is spaced from said upper edge, and said strips each being connected to said backing sheet along *a plurality of transverse connection lines* running substantially transverse to said longitudinal connection line, each transverse connection line extending toward the upper edge of the corresponding strip from adjacent said longitudinal connection line of a corresponding strip and terminating at a location spaced from said upper edge of the corresponding strip, each of said *plurality of strips* being located along the length of said backing sheet, *such that strips positioned between upper and lower adjacent strips have upper and lower overlapping portions,* said upper overlapping portion being defined between the location of termination of said transverse connection lines and the upper edge of the corresponding strip, said lower overlapping portion being defined between the longitudinal connection of the corresponding strip and the lower edge of the corresponding strip, *said plurality of strips including an uppermost strip connected to said backing sheet by a longitudinal connection line and having a lower overlapping portion extending from said longitudinal connection line to said bottom edge of the uppermost strip.*

Claim Two (emphasis added).

b. *The '450 Patent Prosecution History*

As stated, the application for the '450 Patent (the " '450 Patent Application") was filed on 20 September 1988. *See* '450 Patent Prosecution History attached to Mentlik Certif. as Exh. D (the "Prosecution History") at 7. The '450 Patent Application acknowledged the existence of other flexible holder sheets. *See* Prosecution History at 10. The prior art, however, was alleged to "[have been] cumbersome to load, allow introduction of dust or moisture, and ... allow inadvertent dislodgement of the contents." *See id.*

The invention Roberg sought to patent "provide[d] pockets with shallow side walls so that the material above the walls act[ed] as a flap and in cooperation with a like oppositely functioning flap from above [could] function advantageously as a loading guide, a dust and moisture guard, and a security flap." *See id.* at 10–11.

The initial '450 Patent Application was rejected. *See* Prosecution History at 32. The claims in the application failed to particularly point out and distinctly claim the subject matter of the invention. *See id.* at 33. In addition, the Patent Examiner found it would have been obvious, in light

of the prior art, to create strips with a plurality of pockets and closures that ran the whole length of a given row. *See id.* at 34.

Roberg submitted an amendment to the '450 Patent Application. *See* Prosecution History at 37. In support of the '450 Patent Application, Roberg stated:

> One feature of the present invention which is not shown in the [prior art] is that different rows of pockets may be sealed by an overlapping flap which is formed by a second sheet which is bonded on top of a first sheet in a manner to define the pockets and to provide the overlapping flap which extends to the pockets below the first row. In addition[,] the side forming portions of the pockets disclosed by applicant do not extend up to the top edge of the second and third sheets of the first and second row[s] of pockets. Applicant's arrangement makes it possible to have a second sheet overlie the third sheet to form a covering for the openings of the pockets which are situated below.

*Id.* at 41.

The amended application was rejected in part and objected to in part. *See* Prosecu-

tion History at 45. The rejected claims were rejected as being obvious in light of the prior art. *See id.* at 46–49. Specifically, the upper flap structure with overlapping portions was found to have been obvious to one of ordinary skill in the art. *See id.* at 46–47. The language detailing the "overlap portions" was also found to be ambiguous. *See id.* at 47.

Claim Three[4] of the '450 Patent Application was objected to as being dependent upon a rejected base claim. *See* Prosecution History at 48. The Patent Examiner stated this claim would be "allowable if rewritten to overcome the objection ... and to include all of the limitations of the base claim and any intervening claims."[5] *Id.*

In response, Roberg submitted another amendment to the '450 Patent Application. *See* Prosecution History at 54. This amendment canceled all previous claims and added the claims that were accepted as Claim One and Claim Two of the '450 Patent. *See* Prosecution History at 54–61.

### 2. The 20th Century Photo I.D. Pages

The Photo I.D. Pages are made and sold by 20th Century Plastics. *See* Anglo Dec-

---

4. Claim Three of the '450 Patent Application read as follows:

 A holder according to claim 2, wherein: said plurality of strips includes an uppermost strip connected to said backing sheet by a longitudinal connection line and having a lower overlap portion extending from said longitudinal connection line to said bottom edge of the uppermost strip.
 Prosecution History at 20.

5. The base claim and intervening claim were Claims One and Two of the '450 Patent Application. These claims read as follows:

 1. A holder for thin items comprising: a backing sheet having a length, a width and a thickness; a plurality of strips having a length, a width substantially equal to the width of said backing sheet and a thickness, each of said strips having an upper edge and a lower edge, said strips being connected to said backing sheet along a longitudinal connection line running substantially parallel to each of said strip edges spaced from said lower edge a distance which is

 less than the distance said longitudinal connection line is spaced from said upper edge, and said strips each being connected to said backing sheet along a plurality of transverse connection lines running substantially transverse to said longitudinal connection line, each transverse connection line extending toward the upper edge of the corresponding strip from adjacent a longitudinal connection line of a corresponding strip and terminating at a location spaced from said upper edge of the corresponding strip.
 2. A holder according to claim 1, wherein each of said plurality of strips is located along the length of said backing sheet such that strips positioned between upper and lower adjacent strips have upper and lower overlap portions, said upper overlap portion being defined between the location of termination of said transverse connection lines and the upper edge of the corresponding strip, said lower overlap portion being defined between the longitudinal connection of the corresponding strip and the lower edge of the corresponding strip.
 Prosecution History at 10–11.

laration at ¶ 2. The Photo I.D. Pages have only two front strips.[6] *See id.* at ¶ 5. Roberg contends the Photo I.D. Pages infringe the '450 Patent. *See* Complaint ¶ 1.

The 20th Century Photo I.D. Pages have the following construction:

a. A transparent-plastic (polypropylene) backing sheet forms the entire rear surface of the photo pages.

b. Secured by heat seals to the backing sheet are upper and lower front strips which form pockets to receive photos.

c. In the illustrated version, a pair of vertically spaced horizontal heat seals or *longitudinal connection lines* secure the lower portion of each strip to the backing sheet. The upper seal defines the bottom of the photo-receiving pocket, and the lower seal bonds the lower edge of the strip to the backing sheet. If the photo to be stored is high enough to extend to the bottom of the strip, the upper seal is eliminated.

d. The opposed right and left sides of each strip are each secured to the backing sheet by a pair of horizontally spaced vertical heat seals or *transverse connection lines.* The inner vertical seals define the right and left sides of the pocket, and the outer vertical seals secure the side edges of the strips to the backing sheet. A single vertical seal can be used at each side of the pocket if the photo to be stored is wide enough to extend to the opposed sides of the strip. If narrow photos are to be stored, additional vertical seals can be used to provide side-by-side pockets for each strip. The vertical seals extend upwardly from the up-

per horizontal seal of *longitudinal connection line* to terminate at a position which is spaced below the strip upper edge, thus forming a free upper edge portion of *upper overlapping portion.*

e. An upper locking flap is secured to the backing sheet by a horizontal seal just above the upper edge of the strip. A lower locking flap is secured to the lower edge of the upper strip by horizontal seal (the lower seal described above) just above the upper edge of the lower strip. The locking flaps are narrow strips of white plastic (polypropylene) which can receive written description of the stored photographs.

f. The locking flaps can underlap the upper edge of the associated strip to enable insertion of a photo into a pocket, and can overlap the strip upper edge to lock the photo in the pocket. The underlapping position is illustrated in Figure 2 of Exhibit 3 on the upper strip, and the overlapping position on the lower strip.

g. The left margin of the photo page is punched to enable storage in a ring binder.

Anglo Declaration at ¶ 4(a–g).

*Discussion*

To prevail on a motion for summary judgment, the moving party must establish "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The present task is to determine whether genuine issues of material fact exist and whether either 20th Century or Roberg is entitled to judgment as a matter of law. *See, e.g., Warner–*

---

6. Two styles of the Photo I.D. Pages are depicted in Exhibit 1 of the Anglo Declaration. Thomas J. Anglo is Vice–President and General Manager of 20th Century Plastics, Inc. *See* Anglo Declaration.

All of Photo I.D. Pages use only two front strips. *See* Anglo Declaration at ¶ 5. Since

the issuance of the '450 Patent, 20th Century has not made or sold photo pages of the locking-flap style having three or more front strips. *See id.* The Photo I.D. Pages are the only 20th Century photo pages which have locking flaps. *See* Declaration of Thomas J. Anglo ¶ 5.

*Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 39 n. 8, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) (District Court obliged to grant summary judgment if only one conclusion as to infringement could be reached by reasonable jury); *ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 540 (Fed.Cir. 1998) (same).

A District Court may not resolve factual disputes in a motion for summary judgment. *See Linan–Faye Constr. Co. v. Housing Auth.,* 49 F.3d 915, 926–27 (3d Cir.1995) ("[A]t the summary judgment stage, 'the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'") (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Desvi, Inc. v. Continental Ins. Co.,* 968 F.2d 307, 308 (3d Cir.1992) ("[T]hreshold inquiry is whether there are 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party'") (citations omitted).

In considering a motion for summary judgment, all evidence submitted "must be viewed in the light most favorable to the nonmoving party and all inferences must be drawn in that party's favor." *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1077 (3d Cir.1992) (citing *Erie Telecommunications v. Erie,* 853 F.2d 1084, 1093 (3d Cir.1988)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Kowalski v. L & F Products,* 82 F.3d 1283, 1288 (3d Cir.1996); *Meyer v. Riegel Products Corp.,* 720 F.2d 303, 307 & n. 2 (3d Cir.1983) (the court must resolve "all inferences, doubts and issues of credibility ... against the moving party"), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984).

■ When both sides file cross motions for summary judgment, each side "adequately preserve[s] its objection to granting summary judgment for [the opposing side]." *Coolspring Stone Supply, Inc. v. American States Life Ins. Co.,* 10 F.3d 144, 150 (3d Cir.1993); *see also Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968) (stating "[c]ross motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute ... that the losing party waives judicial ... determination whether genuine issues of material fact exist"); *Panhandle Eastern Pipe Line Co. v. Utilicorp United Inc.,* 928 F.Supp. 466, 470 (D.Del.1996) (stating "the [c]ourt must consider the [cross motions for summary judgment] independently").

■ Both moving parties retain the burden of demonstrating there is no genuine issue of material fact; summary judgment is not automatically granted. *See Manetas v. International Petroleum Carriers, Inc.,* 541 F.2d 408, 413 (3d Cir.1976) ("[C]ross motions for summary judgment do not warrant the court granting summary judgment."); *Newark Morning Ledger Co. v. United States,* 539 F.2d 929, 932 (3d Cir. 1976) ("[T]he general rule is that cross-motions for summary judgment do not constitute an agreement that if one is rejected the other is warranted."); *Pittston Co. v. Allianz Ins. Co.,* 905 F.Supp. 1279, 1293 (D.N.J.1995), *rev'd on other grounds,* 124 F.3d 508 (3d Cir.1997).

■ In a patent infringement case, "[a] court may grant summary judgment when, upon construction of the claims and with all factual inferences drawn in favor of the non-movant, it is apparent that only one conclusion as to infringement could be reached by a reasonable jury." *ATD Corp.,* 159 F.3d at 540; *see also Warner–Jenkinson,* 520 U.S. at 39 n. 8, 117 S.Ct. 1040 ("Where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment."); *Phillips Petroleum Co. v. Huntsman Polymers Corp.,* 157 F.3d 866, 870 (Fed.Cir.1998). The construction

of the claim is purely a question of law. *See Phillips Petroleum,* 157 F.3d at 870; *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995) (in banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The question of infringement, however, presents issues of fact which a court should review with great care before granting a motion for summary judgment. *See Cole v. Kimberly–Clark Corp.,* 102 F.3d 524, 528 (Fed.Cir. 1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 56, 139 L.Ed.2d 20 (1997).

### A. *Patent Infringement*

■ In a patent infringement action, a two-step analysis must be conducted. *See EMI Group North America, Inc. v. Intel Corp.,* 157 F.3d 887, 891 (Fed.Cir.1998); *Cybor Corp. v. FAS Tech., Inc.,* 138 F.3d 1448, 1454 (Fed.Cir.1998) (in banc); *CVI/ Beta Ventures, Inc. v. Tura LP,* 112 F.3d 1146, 1152 (Fed.Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998); *Cole,* 102 F.3d at 528; *Markman,* 52 F.3d at 976 (citing *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 821 (Fed.Cir.1992)); *Cleanox Envtl. Svcs., Inc. v. Hudson Envtl. Svcs., Inc.,* 14 F.Supp.2d 601, 606, *aff'd in relevant part, Mantech Envtl. Corp. v. Hudson Envtl. Svcs., Inc.,* 152 F.3d 1368 (Fed.Cir.1998); *Phillips Elec. North Am. Corp. v. Universal Elec. Inc.,* 930 F.Supp. 986, 997 (D.Del.1996). First, the meaning and scope of the patent claims asserted to be infringed must be determined. *See Markman,* 517 U.S. at 384, 116 S.Ct. 1384; *EMI Group,* 157 F.3d at 891; *Cybor Corp.,* 138 F.3d at 1454; *CVI/ Beta Ventures,* 112 F.3d at 1152; *Cole,* 102 F.3d at 528; *Markman,* 52 F.3d at 976; *Cleanox,* 14 F.Supp.2d at 607. This step is commonly referred to as "claim construction" or "claim interpretation."[7] *Markman,* 52 F.3d at 976; *Cleanox,* 14 F.Supp.2d at 607. Second, the properly construed claims must be compared to the device or method that is accused of infring-

ing. *See EMI Group,* 157 F.3d at 891; *Cybor Corp.,* 138 F.3d at 1454; *Markman,* 52 F.3d at 976; *Cleanox,* 14 F.Supp.2d at 607.

### B. *Claim Construction*

■ A patent is a fully integrated document; it must set out a written description of the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains" to practice the invention. 35 U.S.C. § 112 ("Section 112"). "It has long been understood that a patent must describe the exact scope of an invention and its manufacture to secure to [the patentee] all to which he [or she] is entitled, [and] to apprise the public of what is still open to them." *Markman,* 517 U.S. at 373, 116 S.Ct. 1384.

■ The interpretation and construction of a patent claim are "exclusively within the province of the court." *Markman,* 517 U.S. at 391, 116 S.Ct. 1384; *see also Cybor Corp.,* 138 F.3d at 1454; *CVI/ Beta Ventures,* 112 F.3d at 1152; *Cleanox,* 14 F.Supp.2d at 607. A court therefore has "the power and obligation to construe as a matter of law the meaning of language used in the patent claim." *Markman,* 52 F.3d at 979; *see also Digital Biometrics, Inc. v. Identix, Inc.,* 149 F.3d 1335, 1343 (Fed.Cir.1998); *Exxon Chem. Patents, Inc. v. Lubrizol Corp.,* 64 F.3d 1553, 1556 (Fed.Cir.1995), *cert. denied,* 518 U.S. 1020, 116 S.Ct. 2554, 135 L.Ed.2d 1073 (1996); *CVI/Beta Ventures,* 112 F.3d at 1152; *Cleanox,* 14 F.Supp.2d at 607. When performing such an analysis, various sources may be consulted, including those that are intrinsic and extrinsic to the patent claims. *See Cybor Corp.,* 138 F.3d at 1454; *CVI/ Beta Ventures,* 112 F.3d at 1152; *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582–83 (Fed.Cir.1996); *Lubrizol,* 64 F.3d at 1556; *Markman,* 52 F.3d at 979–80; *Cleanox,* 14 F.Supp.2d at 607.

---

**7.** For purposes of consistency, the term "claim construction" will be used throughout this opinion when referring to the first step in an infringement analysis.

There is a hierarchy of evidence [8] to be considered when construing the language of a patent. *Vitronics*, 90 F.3d at 1582; *see also Digital Biometrics*, 149 F.3d at 1344; *Cybor Corp.*, 138 F.3d at 1454 (majority opinion) and 1462 (Plager, J., concurring); *Lubrizol*, 64 F.3d at 1556; *Cleanox*, 14 F.Supp.2d at 607. "First, and most importantly, the language of the claim defines the scope of the protected invention." *See Bell Communications Research, Inc. v. Vitalink Communications, Corp.*, 55 F.3d 615, 619 (Fed.Cir.1995); *see also Vitronics*, 90 F.3d at 1582; *Cleanox*, 14 F.Supp.2d at 607.

Second, "it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *See Vitronics*, 90 F.3d at 1582. The specification, as a written description of the invention, is always highly relevant to the claim construction analysis. *See id.* In most cases, "[the specification] is dispositive; it is the single best guide to the meaning of a disputed term." *See id.*

Third, a court may also consider the prosecution history of the patent if it has been placed in evidence. *See Vitronics*, 90 F.3d at 1582. If, however, the specification supports the definition of a term that is apparent from the claim limitation, then it would be improper to read any further limiting definition into the patent claim. *See Mantech Envt'l*, 152 F.3d at 1374. In the instant matter, as discussed below in relation to prosecution history estoppel, the Prosecution History does not address, or provide insight into,

the definition of the disputed language. Accordingly, construction of the '450 Patent must focus upon the Claims and the Specification.

### 1. The Claims

Section 112 requires a patent specification "conclude with one or more claims [9] particularly pointing out and distinctly claiming the subject matter which the applicant regards as his [or her] invention." 35 U.S.C. § 112.

When interpreting a claim, the words of the claim itself are first considered "to define the scope of the patented invention." *Vitronics*, 90 F.3d at 1582 (citing *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 620 (Fed.Cir.1995)). The words are interpreted in accordance with their ordinary meaning, as understood by a person reasonably skilled in the art. *See Vitronics*, 90 F.3d at 1582; *Quantum*, 65 F.3d at 1580; *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387 (Fed.Cir.1992); *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759 (Fed.Cir.1984); *Phillips Elec. North Am. Corp. v. Universal Elec. Inc.*, 930 F.Supp. 986, 997 (D.Del.1996).

A claim should not be construed in a manner that renders the claim language "meaningless or superfluous." *Texas Instruments, Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed.Cir.1993). If the inventor has used a term in a manner other than its ordinary meaning, that meaning should be given effect because the inventor is free to be his

---

8. Roberg and 20th Century agree there is no need consider extrinsic evidence to properly construe Claim One and Claim Two. *See* Tr. 5 Jan. '98 Proceedings at 8, ll. 10–21. Review of the Claims, Specification and Prosecution History support the conclusion it is unnecessary to resort to extrinsic evidence to properly define the scope of the '450 Patent. In any event, extrinsic cannot be used to vary or contradict the terms of the patent claims. *See Cleanox*, 14 F.Supp.2d at 609.

9. A patent claim typically has three parts: the preamble, the transition, and the body. *See* Donald S. Chisum, Patents § 8.06(1)(b) (1997). The preamble is an introductory phrase summarizing the invention, its relation to the prior art, or its intended use or properties. *See id.* The transition is a phrase connecting the preamble to the body of the claim. *See id.* The body consists of a recitation of the elements and limitations that "define the product or process to be encompassed within the patent monopoly." *Id.*

or her own lexicographer.[10] *See Vitronics,* 90 F.3d at 1582 (citing *Hoechst Celanese Corp. v. BP Chems., Ltd.,* 78 F.3d 1575, 1578 (Fed.Cir.1996)); *see also Markman,* 52 F.3d at 980; *accord Hormone Research Found., Inc. v. Genentech, Inc.,* 904 F.2d 1558, 1563 (1990); *ZMI Corp. v. Cardiac Resuscitator Corp.,* 844 F.2d 1576, 1580 (Fed.Cir.1988). Any term given a special meaning, however, must be so defined in the specification or its definition must be clear by implication. *See Markman,* 52 F.3d at 980; *accord Vitronics,* 90 F.3d at 1582.

### 2. The Specification

The patent claims "must be read in view of the specification, of which they are a part." *Markman,* 52 F.3d at 979 (citing *Autogiro,* 384 F.2d at 397); *see also SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1121 (Fed.Cir.1985). Section 112 provides:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112. The specification is "highly relevant to the claim construction analysis" because it contains a written description of the invention that must be clear and complete enough to enable those of ordinary skill in the art to make and use it. *Vitronics,* 90 F.3d at 1582.

 The specification must be reviewed "to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Vitronics,* 90 F.3d at 1582; *CVI/Beta Ventures,* 112 F.3d at 1153. In this regard, the specification "may act as a sort of

dictionary, which explains the invention and may define terms used in the claims." *Markman,* 52 F.3d at 979. It acts as a dictionary when it "expressly defines terms used in the claims or when it defines terms by implication." *Vitronics,* 90 F.3d at 1582.

 The specification, however, "does not delimit the right to exclude. That is the function and purpose of the claims." *Markman,* 52 F.3d at 980. In addition, "references in the specification to a preferred embodiment, or an illustrative example, do not limit the scope of the patent claim." *Lucas Aerospace, Ltd. v. Unison Indus., L.P.,* 890 F.Supp. 329, 332 (D.Del.1995).

### C. Construction of Claim One and Claim Two of the '450 Patent

Claim One and Claim Two are drafted as independent claims, though the claims are almost identical. *See* Claim One; Claim Two. The preamble, "a holder for thin items," of Claim One and Claim Two is identical. *See* '450 Patent at col 4, 1. 37 and col. 5, 1. 1. The language that differs between the two claims appears at the end of each claim. The following is the differing claim language:

> Claim One: said lower overlapping portion being positionable to overlap said upper overlapping portion of an adjacent strip and said lower overlapping portion being position to underlap said upper overlapping portion of the adjacent strip.

*See* '450 Patent col. 4, 11. 64–68.

> Claim Two: said plurality of strips including an uppermost strip connected to said backing sheet by a longitudinal connection line and having a lower overlapping portion extending from said longitu-

---

10. In the instant matter, Roberg has provided explicit definitions for the top front strip and the bottom-most front strip attached to the backing sheet. *See* '450 Patent at col. 1, 11. 39–40, 63–65; *see also infra* Judicial Construction of the Term "Plurality."

dinal connection line to said bottom edge of the uppermost strip. *See* '450 Patent col. 6, 11. 12–16.

With respect to claim construction, Roberg asserts the issue is "[w]hether the term 'plurality' can be afforded its ordinary meaning in view of the [C]laims, [S]pecification, and [P]rosecution [H]istory."[11] Roberg Moving Brief at 1. 20th Century, however, concedes the Photo I.D. Pages contain a "plurality" of strips, but argues the appropriate issue is whether the Photo I.D. Pages "contain 'strips positioned between upper and lower adjacent strips.'" 20th Century Opposition Brief at 3–4. These issues are common to both Claim One and Claim Two. Accordingly, the construction of Claim One and Claim Two, in light of these issues, will be addressed simultaneously.

### 1. Construction of the Contested Language in the '450 Patent by Roberg and 20th Century

The phrase "plurality of strips" appears twice in Claim One and three times in Claim Two. *See* Claim One at col. 4, II. 38, 54; Claim Two at col. 5, 1. 2 & col. 6, ll. 1, 11. The phrase is not expressly defined in the Claims or in the Specification. *See* '450 Patent. The parties agree the term plurality has an ordinary meaning of two or more.[12] *See* 20th Century Opposition Brief at 2 n. 1; Roberg Moving Brief at 11–12. Roberg and 20th Century differ, however, as to the importance of the inclusion of the phrase "such that strips positioned between upper and lower adjacent strips. . . ." in both Claim One and Claim Two.

Roberg argues that the meaning of "plurality" has not been modified by the language: "such that strips positioned between upper and lower adjacent strips." *See* Roberg Moving Brief at 13; Roberg Opposition Brief at 8. Roberg argues that when 20th Century asserts the language "strips positioned between upper and lower adjacent strips" requires the existence of three or more strips, 20th Century is viewing the language in a vacuum and out of context. *See* Roberg Opposition Brief at 9.

Roberg maintains the phrase, "strips positioned between upper and lower adjacent strips," provides "for additional understanding, a positional relationship for strips positioned between upper and lower strips as having an upper and a lower overlapping portion when the plurality of strips includes three or more [strips]." *See* Roberg Moving Brief at 13; Transcript of 21 December 1998 Hearing ("Tr. 21 Dec. 1998 Hearing") at 15.

To further demonstrate the contested language in Claim One and Claim Two is "positional," Roberg asserts the elements of a claimed combination are identified using the definite article "the" or "said." *See* Roberg Moving Brief at 14. Because the limitation claim language begins with the word "such that strips. .," and not "such that said strips" or "such that the strips," Roberg argues the phrase does not constitute a part of the claimed combination of elements. *See id.* Roberg argues the phrase merely recites a positional relationship. *See id.;* Roberg Opposition Brief at 9.

In addition, Roberg cites certain portions of the Specification to support construing Claim One and Claim Two as encompassing embodiments having two or more strips. *See* Roberg Opposition Brief

11. Roberg argues, however, it is the use of overlapping flaps to close a strip of pockets that is the distinguishing feature of the '450 Patent, and not the use of a "plurality" of strips. *See* Roberg Opposition Brief at 6; Tr. 21 Dec. 1998 hearing at 15, 19. Claim One and Claim Two contemplate the use of a flap to create a seal by overlapping or underlapping a portion of the strip immediately below the flap. *See* Claim One, Col. 4, ll. 56–68; Claim Two, Col. 6, ll. 5–16.

12. The absence of dispute over the definition of plurality is further evidenced by the fact neither party addressed the definition of "plurality" at the 21 December 1998 Hearing. *See* Tr. 21 Dec. 1998 Hearing.

at 9. For example, the Specification describes the invention as comprising a flexible backing sheet on which are fastened two or more front strips with at least one overlapping region. *See id.* This describes a holder consisting of at least one strip containing a pocket or pockets.

Roberg further asserts, from the very beginning of the application process, he attempted to patent a holder containing two or more strips. *See* Tr. 21 Dec. 1998 Hearing at 25 (citing Mentlik Certif. Exh. D. at 11 ("The invention provides a holder for thin items . . . which comprises a flexible backing on which are fastened two or more parallel front strips.")). Roberg argues the '450 Patent, as issued, may be read to encompass a two strip embodiment. *See id.* at 25–26.

20th Century argues the phrase "such that strips positioned between upper and lower adjacent strips" is a structural limitation of the claim. *See* 20th Century Opposition Brief at 4–10. 20th Century further argues this phrase, properly construed, limits the definition of the term "plurality of strips" to mean "three or more" pocket forming strips. *See* 20th Century Moving Brief at 13–14; 20th Century Opposition Brief at 4.

20th Century contends all words contained in the claims must be given meaning. *See* 20th Century Opposition Brief at 5 (citing *Exxon Chemical Patents, Inc. v. Lubrizol Corp.,* 64 F.3d 1553, 1557 (Fed. Cir.1995)). As long as the phrase "such that strips positioned between upper and lower adjacent strips" has meaning, 20th Century asserts its Photo I.D. Pages do not infringe the '450 Patent. *See id.*

20th Century further contends if the language "such that strips positioned between upper and lower adjacent strips" is applied when there are three or more strips, but not at other times, then the limitation would be conditional. *See* 20th Century Opposition Brief at 10 n. 5. 20th Century argues construing the claims to include conditional language would render the claims invalid under Section 112 for not distinctly claiming the subject matter. *See id.*

20th Century argues Roberg cannot use one isolated statement in his specification to contradict the plain meaning of the Claims. *See* 20th Century Moving Brief at 16. 20th Century contends if a patent holder describes a particular embodiment of his invention in the specification, but does not include the embodiment in his claims, the unclaimed embodiment is dedicated to the public. *See id.* at 15–16 (citing *Unique Concepts, Inc. v. Brown,* 939 F.2d 1558, 1562–63 (Fed.Cir.1991)).

### 2. *Judicial Construction of the Language at Issue*

■ A review of the entire '450 Patent indicates the construction proffered by Roberg is correct. When the language "such that strips positioned between upper and lower adjacent strips . . ." is read in context with the other language of the patent, it is clear the challenged language addresses the novel closure method, not a minimum number of strips of pockets to hold thin items. The language "such that strips positioned between upper and lower adjacent strips . . ." is positional and depicts the configuration of strips which may be positioned between upper and lower adjacent strips when they are present.

A reading of the '450 Patent places the contested language in the proper context. In the section of the '450 Patent entitled "Abstract" ("Abstract '450 Patent") the reader is alerted that the invention concerns a "holder for thin items including a backing sheet and a plurality of strips." Abstract '450 Patent. In the section entitled "Field of the Invention" it is disclosed the invention "relates *in general* to flexible holder sheets" for holding thin items. '450 Patent at col. 1, ll. 6–7 (emphasis added).

The background of the invention explains there are other flexible holder sheets known. *See* '450 Patent at col. 1, ll. 19–20. The prior art, however, was described as "cumbersome to load, allowing

introduction of dust or moisture, and may allow inadvertent dislodgment of the contents." *Id.* at col. 1, ll. 20–23. The '450 Patent was presented as a solution to these disadvantages by providing

> pockets with shallow side walls so that material above the walls acts as a flap and in cooperation with a like oppositely functioning flap from above can function advantageously as a loading guide, a dust and moisture guard, and a security flap.

*Id.* at col. 1, ll. 24–29. Accordingly, the unique feature of the '450 Patent concerns the use of flaps to correct the loading, security and protection problems present in the prior art.

The "Summary of Invention" states: "The invention provides a holder for thin items to be stored and/or displayed and protected which comprises a flexible backing sheet on which are fastened *two or more parallel front strips* [13] with at least one overlapping region." '450 Patent at col. 1, ll. 31–35. To this point in the '450 Patent, the document describes a holder for thin items which could be configured with at least one pocket forming strip and one parallel front strip forming an overlapping flap and facilitating the contemplated novel closure method.

This reading is further supported by the explicit definitions provided for the top front strip ("Top Front Strip") and the bottom front strip ("Bottom Front Strip") attached to the backing sheet. The Top Front Strip is defined as "ha[ving] only a

longitudinal seal." [14] *See* '450 Patent at col. 1, ll. 39–40. The Bottom Front Strip is defined as "[t]he bottom-most strip with one or more pockets [that] has no strip-bottom flap because there is no overlap region below the bottom-most pocket or pockets." *Id.* col. 1, ll. 63–65. These definitions take on added significance when the Claims are read and the language at issue is construed.

As stated, 20th Century contends the language "such that strips positioned between upper and lower adjacent strips have upper and lower overlapping portions" is a structural limitation of Claim One and Claim Two. *See* 20th Century Opposition Brief at 4–10. Specifically, 20th Century argues the language requires at least three pocket forming strips. [15] *See* 20th Century Moving Brief at 13–14; 20th Century Opposition Brief at 4. This argument, however, is without support when the Claims are properly read. *See Markman,* 52 F.3d at 979 (claims must be construed in light of the specification, of which they are a part).

The contested language in Claim One and Claim Two is positional in that it addresses the configuration of a strip which may be placed between two adjacent strips. While the contested language does define the structure of a strip so placed between two adjacent strips, the language does not require the presence of such a strip.

As stated, the '450 Patent contemplates the use of a plurality of strips to effectuate

---

13. Two parallel front strips are the minimum required to effectuate the novel closure method of the '450 Patent.

14. Accordingly, while the word strip, as used in the '450 Patent, generally refers to pocket forming strips, the Top Front Strip does not contain a pocket or pockets. The Top Front Strip is included in the strips constituting the plurality of strips. *See* '450 Patent at col. 1, ll. 32–40.

15. Contrary to the argument of 20th Century, *see* 20th Century Opposition Brief at 5, the language "such that strips positioned between upper and lower adjacent strips have upper

and lower overlapping portions" is given effect in an embodiment containing two pocket forming strips. Such an embodiment, fabricated pursuant to the '450 Patent, would have a pocket forming strip placed between the Top Front Strip and the Bottom Front Strip. This strip would have both an upper overlapping portion, to facilitate the novel closure method with the Top Front Strip, and a lower overlapping portion, to facilitate the novel closure method with the Bottom Front Strip. Accordingly, the contested language is given effect in an embodiment containing two pocket forming strips.

the novel closure method. This requires the presence of two or more strips, one of which is a pocketless Top Front Strip. Given the definitions provided for the Top Front Strip and Bottom Front Strip, the '450 Patent encompasses embodiments with one or more pocket forming strips. *See, e.g.,* '450 Patent at col. 1, ll. 44–48 ("The arrangement of the front *strip,* or strips, each sealed once longitudinally and at least twice transversely to the backing sheet, form at least one pocket into which are inserted the thin items.") (emphasis added). The second strip, in an embodiment containing only one pocket forming strip, is the Top Front Strip, as defined.

The definitions of the configuration of the Top Front Strip, '450 Patent at col. 1, ll. 39–40, and the Bottom Front Strip, *id.* at col. 1, ll. 63–65, explain the purpose of the contested language. The language "such that strips placed between upper and lower adjacent strips have upper and lower overlapping portions" explains how the novel closure method will be accomplished when there is a strip placed between upper and lower adjacent strips. When construing Claim One and Claim Two in light of the Specification it is clear neither Claim One nor Claim Two requires more than one pocket forming strip.

The '450 Patent is construed to encompass holders for thin items containing at least one pocket forming strip and employing the novel system of closure defined by the use overlapping flaps. This is the only construction consistent with the entire language of the '450 Patent and is supported by the fact the '450 Patent relates *in general* to holders for thin items. *See* '450 Patent at col. 1, ll. 6–7. The novel aspect is the closure method claimed in the '450 Patent, and not the mere creation of a holder for thin items. The language concerning a holder for thin items simply provides the context in which the novel closure method claimed in the '450 Patent operates.

D. *Literal Infringement of the '450 Patent by the 20th Century Photo I.D. Page*

██ "Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly." *Cole,* 102 F.3d at 532; *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1105 (Fed.Cir.1996), *cert. denied,* 520 U.S. 1115, 117 S.Ct. 1244, 137 L.Ed.2d 327 (1997); *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1535 (Fed.Cir. 1991).

Roberg asserts all of the structural limitations found in Claim One and Claim Two are present in the Photo I.D. Pages. *See* Roberg Moving Brief at 15–17. As construed, the '450 Patent encompasses two strip embodiments. Accordingly, there is the potential the Photo I.D. Pages infringe the '450 Patent. The Photo I.D. Pages, however, must meet every limitation present in the '450 Patent. *See, e.g., Cole,* 102 F.3d at 532 (literal infringement exists when every limitation recited in patent is found in accused device).

In the instant matter, there appear to be minor physical construction distinctions between the closure method described by the '450 Patent and the closure method present in the Photo I.D. Pages. There appears to be no distinction, however, between the mechanical operation of the novel closure method of the '450 Patent and the closure method employed by the Photo I.D. Pages.

The Photo I.D. Pages, which contain two pocket forming strips, appear to fall within the scope of the '450 Patent, as construed. The issue is whether the closure method employed by the Photo I.D. Pages contains every limitation present in the '450 Patent. 20th Century and Roberg, however, have focused their patent construction arguments on the contested language.

Review of the Photo I.D. Pages and the '450 Patent reveals the existence of genuine issues of material fact concerning

whether the closure method present in the Photo I.D. Pages literally infringes the '450 Patent. Accordingly, both the 20th Century Motion for Summary Judgment, seeking judgment of non-literal infringement, and the Roberg Motion for Summary Judgment, seeking judgment of literal infringement, are denied.

### E. *Infringement Under the Doctrine of Equivalents of the '450 Patent by the 20th Century Photo I.D. Page*

"The doctrine of equivalents enables a patent owner to prove infringement, despite a lack of literal infringement, where the differences between the claimed product and the accused product are insubstantial." *General Mills, Inc. v. Hunt–Wesson, Inc.,* 103 F.3d 978, 984 (Fed.Cir.1997); *Hilton Davis,* 62 F.3d at 1521–22. "Infringement may be found under the doctrine of equivalents when, absent estoppel, every limitation of the asserted claim, or its equivalent, is found in the accused subject matter." *Wright Medical,* 122 F.3d at 1443; *see also Warner–Jenkinson,* 520 U.S. at 40–41, 117 S.Ct. 1040 ("The determination of equivalence should be applied as an objective inquiry on an element-by-element basis.").

### 1. *Prosecution History Estoppel*

■ Prosecution history estoppel "precludes a patentee from obtaining in an infringement suit patent protection for subject matter which it relinquished during prosecution in order to obtain allowance of the claims." *Desper Prod., Inc. v. QSound Labs, Inc.,* 157 F.3d 1325, 1338 (Fed.Cir.1998); *Mark I Mktg. Corp. v. R.R. Donnelley & Sons Co.,* 66 F.3d 285, 291 (Fed.Cir.1995). Amendments to a patent claim designed to overcome a prior art rejection serve to create such an estoppel. *See Desper Prod., Inc.,* 157 F.3d at 1338. "[I]n determining the scope of what, if any, subject matter has been surrendered, the standard is an objective one: what would a reasonable competitor reading the prose-

cution history conclude has been surrendered." *Id.*

In support of the argument Roberg is precluded from arguing a two strip embodiment infringes the '450 Patent, 20th Century contends the prosecution history demonstrates:

1. Roberg and his patent counsel clearly knew how to claim a two-row photo page, and repeatedly attempted to obtain allowance of such claims. Failure to obtain claims on a two-row photo page was not a matter of oversight, but of intentional concession.

2. Roberg and his patent counsel voluntarily canceled all claims covering a two-row photo page, and settled for two claims, both including the "strips positioned between upper and lower adjacent strips" limitation in order to obtain acceptance of the application. These accepted claims can only be properly construed as covering photo pages with three or more rows of pocket-forming strips.

20th Century Moving Brief at 8.

■ Contrary to the assertions of 20th Century, the Prosecution History does not demonstrate a two-strip embodiment was relinquished to gain acceptance of the claims. The objections raised in the prosecution history concern the number of pockets in each row, *see* Prosecution History at 34, the method of closure, *see id.,* and the vagueness or indefiniteness of the language. *See id.* at 47–48.

While one of the rejected application claims specifically claimed a two strip holder, it appears this claim was not rejected on the grounds it contained two strips. *See* Prosecution History at 40, 47–48. Rather, it appears the claim was rejected for failing to distinctly claim the subject matter Roberg regarded as the invention. *See id.* at 48.

It cannot be concluded from the prosecution history that the language "such that strips positioned between upper and lower adjacent strips" was included to overcome

an objection of the Patent Examiner. All of the amendments made by Roberg appear to address the novelty of the closure method. *See id.* 40–43 (explaining the feature of the '450 patent not present in the prior art concerned the sealing process).

A fair reading of the Prosecution History would not lead a reasonable competitor to conclude a two-strip embodiment of the '450 Patent had been surrendered in the application process. Accordingly, prosecution history estoppel will not serve as a bar to Roberg arguing the Photo I.D. Pages infringe the '450 Patent pursuant to the doctrine of equivalents.[16]

### 2. Infringement Pursuant to the Doctrine of Equivalents

As stated, "[i]nfringement may be found under the doctrine of equivalents when, absent estoppel, every limitation of the asserted claim, or its equivalent, is found in the accused subject matter." *Wright Medical,* 122 F.3d at 1443; *see also Warner–Jenkinson,* 520 U.S. at 40–41, 117 S.Ct. 1040. 20th Century based its motion for summary for judgment of non-infringement on the argument the '450 Patent required the presence of three or more pocket forming strips. *See* 20th Century Moving Brief at 19–23. The '450 Patent, however, has been construed to encompass embodiments containing one or more pocket forming strips, and therefore two or more parallel strips. Under this construction, it is possible the Photo I.D. Pages contain every limitation present in the '450 Patent or its equivalent. Accordingly, the 20th Century Motion for Summary Judgment must be denied as concerns infringement pursuant to the doctrine of equivalents.

It appears the Photo I.D. Pages use a lower overlapping flap that is independent of the pocket forming strip above it to accomplish a similar result, in a similar manner, as the novel closure method present in the '450 Patent. Roberg, however, has not moved for summary judgment pursuant to the doctrine of equivalents. *See* Roberg Motion for Summary Judgment. In addition, 20th Century argued if the '450 Patent were construed to encompass a two strip embodiment, the question of infringement pursuant to the doctrine of equivalents would present a question of fact. *See* Tr. 21 Dec. 1998 Hearing at 31–32. Roberg appears to agree with this assessment. *See id.* at 30.

Infringement pursuant to the doctrine of equivalents is generally a question of fact. *See Hilton Davis,* 62 F.3d at 1522. In the instant matter, the question of

**16.** If a claim is required to be amended during prosecution, and nothing is presented to explain the reason for the amendment, a court "should presume that the applicant had a substantial reason related to patentability for including the limiting element added by the amendment." *Warner–Jenkinson,* 520 U.S. at 33, 117 S.Ct. 1040. In such circumstances, prosecution history estoppel "would bar the application of the doctrine of equivalents as to that element." *Id.* This presumption, however, is rebuttable. *See id.* If a patent holder presents an appropriate reason for a required amendment, then prosecution history estoppel will not prevent the patent holder from seeking recovery pursuant to the doctrine of equivalents. *See id.* at 33–34, 117 S.Ct. 1040.

In the instant matter, the Patent Examiner suggested the language "such that strips positioned between upper and lower adjacent strips" be placed in accepted Claim One and Claim Two. *See* Prosecution History at 48 (stating original Claim Three would be allowed if rewritten to overcome rejection under 35 U.S.C. § 112 and to include all of the limitations of the base claim, original Claim One, and any intervening claims, original Claim Two). This, however, does not prevent Roberg from seeking recovery pursuant to the doctrine of equivalents. This language was not new to the amended claims. Rather, this language was part of the original '450 Patent Application. In addition, Roberg asserts the language "such that strips positioned between upper and lower adjacent strips" was included for purposes of clarification. *See* Roberg Moving Brief at 13. Given this explanation, and the fact the language was included in the original '450 Patent Application, it cannot be said the language was included to overcome concerns related to patentability such as to warrant the application of prosecution history estoppel.

whether the independent lower overlapping flap present in the Photo I.D. Pages is the equivalent of the lower overlapping structure described by the '450 Patent presents a question of fact which will not be resolved on summary judgment. Accordingly the 20th Century Motion for Summary Judgment is denied as concerns the doctrine of equivalents.

### F. Attorneys' Fees and Costs.

Pursuant to 35 U.S.C. § 285 ("Section 285"), "the court in exceptional cases may award reasonable attorney fees to the prevailing party." *Id.* In the instant matter, 20th Century has requested attorneys' fees, but has not prevailed on its motion for summary judgment. Moreover, this case, contrary to the 20th Century point of view, is not exceptional. Accordingly, the request for attorneys' fees is denied.

### Conclusion

For the reasons stated, the 20th Century Motion for Summary Judgment is denied as concerns both non-literal infringement and non-infringement pursuant to the doctrine of equivalents. The Roberg Motion for Summary Judgment is also denied.